CAROLINE R. JORDAN & *al. versus* SPRAGUE KEEN.

The object of the statute, requiring specifications, is, that notice may be given of the nature and demand of the claim on which the action is based.

The specifications will not be held insufficient as against a subsequent purchaser where a judgment has been regularly obtained, unless it appears certain that no judgment could be legally given on the money counts for the causes or claims stated in the specifications.

An attachment of real estate, made on a writ specifying that "the claims intended to be proved under the foregoing money counts, are money obtained of plaintiffs by defendant, on notes" specifically described, may be valid as against a subsequent purchaser, although neither of the notes mentioned was due at the time the writ issued.

ON EXCEPTIONS.

TRESPASS *quare clausum,* for breaking and entering plaintiffs' close, and cutting and carrying away five loads of hay.

Plea, general issue, with specifications of defence, denying plaintiffs' title and claiming title in the defendant to the *locus in quo,* by virtue of an attachment made June 20, 1863, on a writ in favor of the President, Directors & Co. of the Auburn Bank, against one Charles F. Jordan, in whom the title was admitted to be at that time. Previous to the rendition of judgment, the plaintiffs in that action duly assigned that suit to the defendant, who duly levied the execution upon the land in dispute. No question was raised concerning the validity of the levy or the assignment.

The writ, upon which the attachment was made, bore date June 20, 1863, and contained only the following money count and specifications : —

"For that the said defendant, at said Auburn, on the day of the purchase of this writ, was indebted to the plaintiffs in the sum of three thousand dollars, for money before then lent by the plaintiffs to the defendant, at his request; and also for other money, before then paid by the plaintiffs, for the use of the said defendant, at his request; and also for other money, before that time had and received by the said defendant, for the use of the plaintiffs; and also for other

money, for interest upon other moneys, then due and owing from said defendant to said plaintiffs, and by the plaintiffs lent and advanced to said defendant, at his request, for divers long spaces of time then elapsed; in consideration thereof, then and there promised the plaintiffs to pay them the several moneys on demand.

" The claims intended to be proved under the foregoing counts, are money obtained of plaintiffs by defendant, on notes described as follows : —

"Note signed by Frank Storer, dated April 4, 1863, on four months, payable at Auburn Bank, Auburn, for one hundred and fifty dollars, to the defendant, and indorsed by him and Moses Megquier.

" Also a note signed by William Parkes, dated April 4, 1863, on four months, for four hundred and sixteen dollars and sixteen cents, payable to defendant, and indorsed by him and one John Megquier, payable at the Auburn Bank, Auburn.

" Also another note signed by defendant, dated May 12, 1863, on six months, for fifteen hundred dollars, payable to the plaintiffs, at their banking house, and bearing the names of John Megquier and Sprague Keen on the back thereof.

" Also a note signed by John M. Allen, dated May 14, 1863, on four months, payable at Auburn & Lewiston Bank, for one hundred and seventy-five dollars, to defendant, and by him indorsed to the plaintiffs.

" Also a note for two hundred and eighteen dollars, signed by Moses Megquier, dated April 1, 1863, on four months, payable at the Auburn Bank, Auburn, to defendant, and by him indorsed to the plaintiffs."

The plaintiffs claimed title by virtue of a deed from C. F. Jordan, dated June 20, 1863, but received into the registry of deeds June 22, 1863.

The plaintiffs objected to the sufficiency of the levy under which the defendant justified, — first, because the writ, on which the original attachment was made, contained only a money count, and that the specification annexed was not

sufficient to authorize an attachment of real estate, and second, because the action was brought and judgment was rendered on notes which, at the time the suit was commenc ed, were not due.

Plaintiffs also objected, that the attachment itself, upon the writ, upon which the judgment was rendered, execution issued and levy made, under which defendant justified, was invalid and of no effect, and created no lien upon any of the real estate of the defendant in that suit, and could constitute no defence in this suit.

The case was withdrawn from the jury and submitted to the presiding Judge for decision, each party reserving the right to except to all rulings in matters of law.

The presiding Judge ruled that the attachment, judgment and levy, under which the defendant justifies, were valid, and ordered judgment for the defendant, to which rulings the plaintiffs alleged exceptions.

*T. A. D. Fessenden* and *Wm. P. Frye*, for the plaintiffs.

The writ, *Auburn Bank* v. *Jordan*, on which the pretended attachment was made, disclosed no cause of action at the time of its date. Neither of the notes mentioned in the specifications was then due, and, upon such a declaration, the notes must be the evidence of the cause of the action.

"Any agreement which would accelerate the time of legal payment would be a change of the contract, and must be made in such form, and on such consideration as would be sufficient to constitute a substantive contract." *Mechanics' Bank* v. *Merchants' Bank*, 6 Met., 13. Any action, then, must be brought upon the new contract. A demurrer to such writ would be sustained. If the notes had been due, the action would have been maintainable. To entitle a plaintiff to judgment, his cause of action must be set out in the declaration. The specifications show the utter want of a cause of action. The language used in the specifications is the language which any pleader would adopt in claiming to recover upon the notes, — "money obtained by

defendant of the plaintiffs on notes described as follows," &c. It was an attempt to evade the law, to do indirectly what the law would not permit to be done directly.

There is no allegation of fraud in the specifications. The notes were valid notes, and described in the specifications as valid, — no insinuation of fraud or any undue means.

Unless the count was upon the notes, then the " nature and amount of the claim" of Auburn Bank was not " set forth in proper counts, or a specification thereof annexed to the writ." R. S., c. 81,. § 31.

The writ did not " furnish such information to subsequent attaching creditors and purchasers as would enable them to know what the demand was." *Saco* v. *Hopkinton*, 29 Maine, 268. If the writ claimed to recover upon the notes, the attachment was void. *Swift* v. *Crocker*, 21 Pick., 241; *Pierce* v. *Jackson*, 6 Mass., 244. If, upon the ground of fraud, then there were no proper allegations.

*C. W. Goddard*, for the defendant.

KENT, J. — The only question presented to us is whether the attachment made on the writ, Auburn Bank against Charles F. Jordan, created a lien against a subsequent purchaser. That writ contained the money counts only. This was clearly insufficient, without specifications of the demand on which the plaintiff founded his action and the nature and amount thereof. This is not denied. But it is contended that the specifications annexed to the writ were sufficient. And this is the question on which the case depends.

The specifications were, in substance, that, "the claims intended to be proved under the foregoing counts, are money obtained of plaintiffs by defendant on notes described as follows"— then follows a description of five notes, signed or indorsed by different persons, and all bearing the name of defendant in that suit, either as signer or indorser. One of the notes is described as "bearing the names of John Megquier and Sprague Keen on the back thereof." Accord-

Jordan *v.* Keen.

ing to the description none of the notes were payable, according to their terms, at the date of the writ. The objections, as stated in the exceptions, were that the specifications annexed were not sufficient to authorize an attachment of real estate, and because the action was brought and judgment rendered on notes, which, at the time the suit was commenced, were not due.

It becomes important, therefore, to consider the object of the statute, requiring specifications under the money counts.

It is within the memory of many of us, when no record was required of the attachment of real estate. Secret attachments were very common, and often not known or disclosed, until a levy on execution was made. In order to protect, particularly subsequent *bona fide* purchasers, the Legislature, in 1838, provided for the record of attachments in the registry of deeds. This operated to remedy the chief objection to secret attachments. But another difficulty was to be guarded against. Suits were instituted often on a general count without any indication of the demand, or of the instruments to be offered to sustain it, or of the actual amount claimed to be due. A subsequent purchaser or attaching creditor, when he examined the records or the writ, found only a general claim, perhaps for thousands of dollars, covered by a single independent count for money had and received. It was therefore deemed just and proper, to require a more particular specification, so that any inquirer might ascertain, not merely the fact that an attachment of real estate had been made, but, approximately at least, the actual amount of the debt or claim sued; and so that the addition of new claims or the substitution of other claims, not set forth in the specifications, might be prevented.

The law has also, at a comparatively recent period, provided that a subsequently attaching creditor, who believes that a prior suit is collusive or fraudulent against him, may take the place of a colluding defendant in court and defend against the plaintiff's claim. But there is no such provision in favor of a subsequent purchaser. If he would invalidate

a prior attachment or levy on the ground of fraud, he can only do so in a real action, in which the title can be determined. But he can also, in such a suit, put in issue the validity of the attachment, although he does not set up any fraudulent or collusive act.or intent. But it is important to consider the grounds on which the last named objection rests. It is that he has not had sufficient notice of the nature and amount of the claim or demand on which the action is based.

In the case before us, we have no copy of the judgment, and are, therefore, ignorant of all subsequent proceedings, except that a judgment was obtained, and that an execution issued, and a levy was duly made on the premises in question. We are thus remitted to the attachment and the questions arising under it. The judgment would seem to be regular in form, and to be binding on the parties to it, until reversed on error. The specifications in this case, it is claimed, show on their face that no action could possibly be sustained under them. But this is denied.

We are not prepared to say that *any* specification of the grounds of claim, however incongruous or inconsistent with the nature of the action set forth in the declaration, must be held sufficient. If, for instance, under a single count for money had and received, the only specification was damages for an assault and battery, it would seem that a subsequent purchaser or attaching creditor might safely disregard the attachment. If, on the declaration and specifications, *it is certain* that no judgment could possibly be legally given, for the causes or claim stated in the specifications, it would, at least, seem to be unreasonable to hold that a purchaser was bound to regard the attachment on such a writ, as creating a legal lien on real estate against him. But we are not called upon to determine such an extreme case, for we do not find an example of the kind in the case before us.

The count in the writ gave notice that the plaintiffs in the suit claimed to recover money in the hands of the defendant, which he ought in equity and good conscience to pay to them. Or, as well stated by the counsel for the

Jordan *v.* Keen.

plaintiffs, — " this form of action is a simple one, and a conscientious one, and about the only thing required to maintain it is, that one man has another man's money which he has not a right conscientiously to retain." Under this count, the plaintiff did not specify that, to maintain it, he should offer the notes named, or claim to recover on the promises therein set forth. But the notice was that they should claim to recover under the counts " money obtained of plaintiffs by defendant *on* notes, described as follows." Now it seems to us, that any person would at once conclude, from the peculiar language used, and from the fact that on the face of the statement, no one of the notes was due, that the claim to recover was not based on all or any one of the notes described, but on some other ground, on which the defendant could as plaintiffs believed, be held liable to refund or pay them money, arising out of some transaction relating to the notes.

We cannot say that there could not possibly be any concurrence of circumstances, or any state of facts which would enable the plaintiffs to recover on the money counts for money obtained on notes. There are many cases of fraud, or fraudulent misrepresentations, which would justify a party in rescinding a contract and which would enable him to maintain an action to recover back money paid or lent. If money is loaned, and notes, represented as genuine, are taken as collateral security, and it is ascertained that they are forged, and the credit is given because they are considered good, may not the money be recovered back, although none of the notes or the original contract have matured and become payable by their terms? We know nothing of the particular facts in this case. All we decide is, that we cannot say that, upon the papers before us, there was a legal impossibility of recovery by the plaintiffs. The plaintiffs in this suit had notice that the bank claimed $3000 for money obtained on notes, amounting in all to $2459. The result is, that the exceptions must be overruled. *Exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.